## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

John Stote, Frances Hannon,
Sean Milliken, Lawrence M. Mc
Arthur, Wayne D. Crosby, Kevin
Bryant, Chris Wolinski, David
Jackson, Donald Breton, Steven
Balsavich, Richard Harris,
Derek Richer, Prince Alexander,
Jose Hernandez, Kevin King,
Henry LaPlante, James Ware,
Kuluwm Asar, Samuel Tollinche,
Jeffery Doucette, Kevin Pierce,
Clinton Richardson, Glen Bovat,
Samuel Correa, Juan Rodriguez,
Jerome Horton, Edward Keith,
Paul Merlino, James Mackenzie,
Shawn Fisher, Justin Holmes, &
David Josselyn,
      Plaintiff's

      v.

Michael T. Maloney, Peter
Allen, Gary Fyfe, Eric Legere,
Kristie Ladouceur, Verizon
Communications, Geri Crisman,
Dr. Gurvinder Kaur Jaiswal,
Verizon of New England, Inc.,
Dale Bissonnette, UMass
Correctional Health Care,
Richard Medeiros, & Fredrick
Callender,
      Defendant's.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

03 - 12067

Referred to MJ LPC

**JURY TRIAL DEMANDED**

## CIVIL RIGHTS COMPLAINT
### With A Jury Demand

This is a §1983 action filed by state prisoners, who were all incarcerated at MCI-Cedar Junction at the time of the events outlined in the complaint.  All of the prisoners are alleging a violation of their constitutional rights and are seeking money damages, declaratory judgment, and injunctive relief.  The Plaintiffs request a trial by jury.

### JURISDICTION

1.  This is a civil rights action under 42 U.S.C. §1983, and the Racketeering Influenced and Corrupt Organizations Act, (RICO) 18 U.S.C. 1961 et. seq.  This Court has jurisdiction under United States Code Annotated 28 § 1331(a) and 1343.

The Court has supplemental jurisdiction over the Plaintiffs' state law claims under 28 U.S.C. § 1367.

.The Plaintiff also invoke the pendent jurisdiction of this Court.

### PARTIES

2.  Plaintiff John Stote is presently incarcerated at Souza Baranowski Correctional Center, P. O. Box 8000, Shirley, MA ol464.

3.  Plaintiff Francis Hannon is presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

4.  Plaintiff Sean Milliken is presently an inmate incarcer-

ated at MCI-Cedar Junction, South Walpole, MA 02071.

5.   Plaintiff Lawrence M. McArthur is presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

6.   Plaintiff Wayne D. Crosby is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

7.   Plaintiff Kevin Bryant is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

8.   Plaintiff Chris Wolinski is currently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

9.   Plaintiff David Jackson is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

10.   Plaintiff Donald Breton is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

11.   Plaintiff Steven Balsavich is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

12.   Plaintiff Richard Harris is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

13.   Plaintiff Derek Richer is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

14.   Plaintiff Prince Alexander is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

15.   Plaintiff Jose Hernandez is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA02071.

16.   Plaintiff Kevin King is presently an inmate incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

17.   Plaintiff Henry LaPlante is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

18.   Plaintiff James Ware is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

19.   Plaintiff Kuluwm Asar is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

20.   Plaintiff Samuel Tollinche is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

21.   Plaintiff Jeffrey Doucette is an inmate presntly incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

22.   Plaintiff Kevin Pierce is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

23.   Plaintiff Clinton Richardson is an inmate presently incarcerated at MCi-Cedar Junction, South Walpole, MA 02071.

24.   Plaintiff Glen Bovat  is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

25.   Plaintiff Samuel Correa is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

26.   Plaintiff Juan Rodriguez is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

27.   Plaintiff Jerome Horton is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

28.   Plaintiff Edward Keith is an inmate presently incarcerated at MCI-Cedar Junction, South Walpole, MA 02071.

29.  Plaintiff Paul Merlino is an inmate presently incarcerated at Souza Baranowski Correctional Center, P.O. Box 8000, Shirley, MA. 01464.

30.  Plaintiff James Mackenzie is an inmate presently incarcerated at Souza Baranowski Correctional Center, P.O. Box 8000, Shirley, MA. 01464.

31.  Plaintiff Shawn Fisher is an inmate presently incarcerated at Souza Baranowski Correctional Center, P.O. Box 8000, Shirley, MA. 01464.

32.  Plaintiff Justin Holmes is an inmate presently incarcerated at Souza Baranowski Correctional Center, P.O. Box 8000, Shirley, MA. 01464.

33.  Plaintiff David Josselyn is an inmate presently incarcerated at MCI-Cedar Junction, P.O. Box 100, South Walpole, MA. 02071.

34.     Defendent Michael T. Maloney is the Commissioner of the
Massachusetts Department of Corrections.  He is responsible for
the training and supervision of the correctional personnel employ
ed by the Massachusetts Department of Corrections.  He is ultimat-
ely responsible for the training and supervision of the correct-
ional personnel employed by the Massachusetts Department of Corr--
ections.  He is sued in his individual and official capacities.
His address is: Massachusetts Department of Corrections, 50 Maple
Street, Suite 3, Milford, MA 01757-3698.

35.     Defendant Peter Allen is the Superintendent of the MCI--
Cedar Junciton, Post Office Box 100, South Walpole, Massachusetts
02071.  He is an agent of Defendant Michael T. Maloney.  He is
responsible for the over all operation of MCI-Cedar Junction.  He
is ultimately responsible for the training and supervision of the
correctional personnel employed at MCI-Cedar Junction.  He is sued
in his individual and official capacities.  Box 100, S. Walpole, MA.

36.     Defendant Gary Fyfe is a Grievance Officer at MCI-Cedar
Junction.  He is an agent of Defendant(s) Michael T. Maloney and
Peter Allen.  He is responsible for the investigation, processing
and resolvement of inmate complaints and grievances.  He is sued
in his individual and official capacities.  Box 100, S. Walpole, MA.

37.     Defendant Eric Legere is a Grievance Officer at MCI-
Cedar Junction.  He is an agent of Defendant(s) Michael T. Maloney
and Peter Allen.  He is responsible for the investigation, process-

-6-

ing and resolvement of inmate complaints and grievances. He is sued in his individual and official capacities. Box 100, S. Walpole, MA

38.    Defendant Kristie Ladouceur is the Department of Corrections Grievance Coordinator. She is an agent of Defendant(s) Michael T. Maloney and Peter Allen. She is the supervisor of Grievance Officers Gary Fyfe and Eric Legere. She is responsible for reviewing the decisions rendered by Defendants Fyfe and legere. She is responsible to make sure all inmate grievances and inmate complaints are resolved fairly. She is sued in her individual and official capacities. 50 Maple Street, Milford, MA 01757-3693.

39.    Defendant Verizon Communications is the provider of the telephone service at MCI-Cedar Junction. Its principle place of business is: 1095 Avenue of the Americas, New York, New York 10036. Verizon of New England, Inc. is the provider of the telephone service to MCI-Cedar Junction, and is a wholly owned subsidiary of Verizon Communications.

40.    Defendant Geri Crisman is the Health Care Administrator at MCI-Cedar Junction. She is the resident representative of UMass Correctional Health Care. She is an agent of Defendant(s) Michael T. Maloney, Peter Allen and UMass Correctional Health Care. She is the supervisor of the Medical Department. She is responsible for reviewing the decisions and conduct of the medical staff. She is responsible to make sure all inmate grievan-

ces and inmate complaints are resolved fairly.  She is sued in her individual and official capacities.  Her principle place of business is: Post Office Box 100, South Walpole, MA 02071 and 1 Research Drive, Westoboro, MA 01581.

41.	Defendant Dr. Gurvinder Kaur Jaiswal is a medical doctor employed at MCI-Cedar Junction.  She is responsible for providing appropriate medical treatment to the Plaintiffs.  She is an agent of Defendants Michael Maloney, Peter Allen and UMass Correctional Health Care.  She is sued in her individual and official capacities.  Her principle place of business is: Post Office Box 100, South Walpole, MA 02071 and 1 Research Drive, Westoboro, MA 01581.

42.	Defendant Dale Bissonnette is a Unit Manager and member of the Classification Board at MCI-Cedar Junction.  She is an agent of Defendants Michael T. Maloney and Peter Allen.  She is responsible for classification and placement decisions at MCI-Cedar Junction.  She is sued in her individual and official capacities.  Her principle place of business is: Post Office Box 100, South Walpole, MA 02071.

43.	Defendant UMass Correctional Health Care is the provider of medical and dental services at MCI-Cedar Junction.  The Defendant UMass Correctional Health Care is the employer of Defendants Geri Crisman and Dr. Gurvinder Kaur Jaiswal.  There principle place of business is: 1 Research Drive, Westoboro, MA, 01518.

-8-

44.      Defendant Richard Medeiros is a correctional officer at
MCI-Cedar Junction, a facility operated by the Massachusetts De-
partment of Corrections.  He is an agent of Defendant Peter Allen
and Michael Maloney.  He is a housing officer, assigned to Suff-
olk Two Block.  He is responsible for the operation of Suffolk
Two Block.  He is sued in his individual and official capacities.
His address is: MCI-Cedar Junction, Post Office Box 100, South
Walpole, MA 02071.

45.      Defendant Frederick Callender is a correctional officer
at MCI-Cedar Junction, a facility operated by the massachusetts
Department of Corrections.  He is an agent of Defendant Peter
Allen and Michael Maloney.  He was a housing officer, assigned to
Suffolk Two Block.  Prior to being fired he was responsible for
the operation of Suffolk Two Block.  He is sued in his individ-
ual and official capacities.  His address is: MCI-Cedar Junction,
post Office Box 100, South Walpole, MA 02071 or Massachusetts De-
partment of Corrections, 50 Maple Street, Suite 3, Milford, MA
01757-3698.

46.      The Plaintiffs did not receive fair adjudication of
of their grievances.  The Prison Litigation Reform Act (PLRA)
was enacted on April 24, 1996.  The purpose of the Prison Lit-
igation Reform Act was to have a plain, speedy and effective
administrative remedies available to inmates.  The grievance
system at MCI-Cedar junction is defective.  The grievance system
is not in substantial compliance with the law.  The grievance
system is not fair and effective.

47.      The prison officials that are the defendants in this
action, Gary Fyfe, Eric legere, Kristie Ladouceur, Peter Allen
and Michael Maloney, are not honest people acting in good faith.
The grievance officers never investigated the Plaintiffs grie-
vances.  They never interviewed relevant witnesses.  They just
deny the grievances.  They falsify grievances responses, discip-
linary reports and classification decisions to cover up their own
misbehavior.  The Defendants have certain assumptions, biases and
prejudices about prisoners which cloud their judgment.  The De-
fendants demonstrated reckless indifference to the Prison Litig-
ation Reform Act, thereby forcing inmates to seek justice and
adjudication of their grievances from a Court of Law, thereby de-
feating the intended purpose of the Prison Litigation Reform Act.

48.      The Plaintiffs have exhaused all administrative remed-
ies.

49.      The Plaintiffs were subjected to reprisal and retaliat--
ion for filing grievances.   There was no one to go to for help
and protection from retaliation.   There was no independent review
by someone not under the direct supervision or control of the In--
stitution or the Department of Corrections.

50.   The classification system is flawed.   The improper classifi-
cations and blatant denial of program participation by Defendants
Dale Bissonnette, Peter Allen and Michael Maloney are unconstit-
utional and affects the Plaintiffs' parole eligibility and good
time credits.   There is no rational basis for classification de-
cisions, they are arbitrary and capricious.

51.   The classification decisions rendered by Dale Bissonnette,
Peter Allen and Michael Maloney are unconstitutional because they
are done in retaliation for exercise of First Amendment rights.

52.   Some of the Plaintiffs were illegally and unlawfully class-
ified to housing units with mentally ill inmates.

53.    In 1995, following a fight between prisoners and an attack
on a guard in the Bristol IV cell block, MCI-Cedar Junction was
locked down.   The disturbance that led to this lockdown was
quickly brought under control, but prisoners were kept in their
cells for 24 hours per day for five months while the administ-
ration reorganized the prison.   The East Wing of the prison (413
beds) was established as a restrictive lockdown unit, with con-
ditions nearly identical to those in the DSU.   This is where the
Plaintiffs were housed during the allegations outlined herein.

54.    The Defendants violated the Plaintiffs rights under 28
U.S.C. §1985(3) when they (1) entered into a conspiracy; (2)
that the purpose of the conspiracy was to deprive the Plaintiffs
of due process, equal protection, access to court, and approp-
riate medical and dental treatment; (3) that an act was committed
in furtherance of the conspiracy; (4) and that injury and damage
resulted.   The Defendants were motivated by a "same racial" or
otherwise "class based" invidiously discriminatory animus.

55.    The conditions in the East Wing Segregation blocks at MCI-
Cedar Junction are "substantially similar" to conditions in De-
partmental Segregation Units (DSU). DSU regulations are "con-
stitutionally required" and apply in this situation and must be
obeyed.   They were not, and accordingly the Plaintiffs rights
were violated.

56.        Defendant Michael Maloney was the Superintendent of
MCI-Cedar Junction during the period of litigation in **Hoffer v.**
**Fair,** SJC #85-71, and has personal knowledge of the underlying
administrative segregation issues advanced herein as well as the
conditions of confinement he later approved as Associate Commiss-
ioner and Commissioner of the Department of Correction during the
1995-2002 MCI-Cedar Junction Max-end lockdown, that is the sub-
ject matter of this litigation.

57.        Defendant Peter Allen was the MCI-Cedar Junction Dep-
uty Superintendent during the later time period of **Hoffer** class
litigation and also has personal knowledge of underlying admin-
istrative segregation confinement he later supervised impliment-
ation of in 1995 for the MCI-Cedar Junction Max-end lockdown, and
subsequently approved as ongoing administrative segregation con-
ditions under the pretextual label of general population.  The
intended purpose was to dupe and deceive the inmates at MCI-
Cedar Junction.  Defendants Dale Bissonnette carried out the con-
spiracy.

58.        Defendants Maloney, Allen and Bissonnette (hereinafter
"the Defendants") had personal detailed knowledge of all **Hoffer**
class Court Orders and Consent Decree Stipulation Agreements, as
well as knowledge of numerous seperate civil actions putting them
on notice of their violations of **Hoffer** class orders between 1995

and 2002.

59.          The Defendants knew their 1995-2002 Max-end segregat-
ion lockdown conditions mad the MCI-Cedar Junction Orientation
Unit, Essex I, Briston I and Suffolk I, Modular Unit and all
other East Wing units, a Departmental Segregation Unit.

60.          The Defendants knew throughout 1995 and 2002 that all
Max-end prisoners, including the named Plaintiffs in this com-
plaint, were certified **Hoffer** DSU Class members, pursuant to the
allowed December 23, 1986 class certification order from Special
Master Linscott and the September 19, 1989 SJC #85-71 Order and
Judgment #17 decision of Chief Justice Paul J. Liacos.

61.          The Defendants knwe throughout 1995 and 2002 that all
Max-end prisoners, including the named Plaintiffs in this com-
plaint, had contract rights for Defendants to "comply fully" with
"103 CMR 421" due process rights under the express **Hoffer** Class
Consent Decree Stipulation of December 1, 1989 in SJC #85-71, and
its implied covenant of good faith and fair dealing, as well as
contract rights under the final judgment.

62.          The Defendants did not appeal **Hoffer** Class Order and
judgment #17, or the final judgment, nor did the Defendants
appeal Single justice Greaney's SJC #85-71 September 26, 1995
injunciton which prohibited the Defendants from repealing the 103
CMR 421 due process segregation regulation, which were based on
Order #11 State Constitutional provisions, such as Articles I,

X, XI and XII of the Massachusetts Declaration of Rights, as well as Mass. GL c.127, §§ 32.39.

63.        Prior to placing Plaintiffs in Max-end DSU segregation the Defendants did not provide and review a substantial threat recommendation from the Superintendent to the Commissioner, as required by 103 CMR 421.09 and MGL.c.127, § 39.

64.        During the entire period of time Plaintiffs were held in Max-end DSU segregation the Defendants did not make required c.127, § 39, 103 CMR 421.09, 103 CMR 421.15(1), and 103 CMR 421. 18 "substantial threat" findings, nor was 103 CMR 421.17 appell- ate review of such findings undertaken.

65.        The Defendants willfully failed to provide Plaintiffs with notice, service copies of documents, DOC file access, pre- hearing Attorney call and right to one continuence to prepare, as required by 103 CMR 421.10(1)(2)(3)(4)95)(6), prior to placing and continually holding Plaintiffs in the Max-end DSU segregation or prior to any classification reviews.

66.        The Defendants willfully denied Plaintiff his pre-DSU segregation Max-end placement hearing rights to call favorable witnesses, testify, present documents, and confront and cross- examine adverse witnesses as well as receive a copy of adverse reports and documents, required by 103 CMR 421.13(1)(2)(3)(4)(5).

67.        The Defendants also failed to make adequate Maz-end DSU findings required by 103 CMR 421.15(2)(a)(b)(c).

-16-

68.      The Defendants denied Plaintiff their 103 CMR 421.16 right to Associate Commissioner's review prior to Max-end DSU placement.

69.      The Defendants denied the Plaintiffs their right to ninety (90) day periodic classification release from Maz-end DSU reviews.

70.      Had the Defendants' provided the Plaintiffs with the foregoing procedural due process rights they would have shown that it was inappropriate to place them in DSU Max-end segregation.

71.      The Defendnats arbitrarily and capriciously placed and held the Plaintiffs in MCI-Cedar Junciton's DSU (Max-end or otherwise) segregation for the periods outlined herein.

72.      The Defendants denied Plaintiffs the opportunity to participate in work, education, rehabilitation programs during time periods identified herein in violation of 103 CMR 421.21, **Hoffer** Order #11.

73.      As a direct proximate result of the Defendants unlawfully holding Plaintiffs in DSU segregation during the time periods set out herein, and at any and all future times plead in this ongoing damage complaint. The Plaintiffs were injured by suffering severe anxiety and mental distress with an extreme fear that the unfair treatment would continue, while such segregation records threaten to cause future denial of lower security trans-

-17-

fer, or parole, if not expunged from Plaintiffs files, and but
for the illegal DSU segregation Plaintiff would not have gotten
involved in any incidents, nor received D-reports, while held
illegally in DSU.

74.       The Defendants fraudulently concealed plaintiffs cause
of action by falsely labelling the Max-end DSU as "general pop-
ulation" from 1995 through 2002.

75.       The Defendants unlawfully holding the Plaintiffs in
Max-end DSU segregation caused loss of any and all opportunities
to earn 2½ days work, 2½ days education, and 2½ days other re-
habilitation program c.127, § 129D goodtime, and absent such ill-
egal segregation and wrongful level 6 MCI-Cedar Junction custody
Plaintiffs would have earned such goodtime elsewhere.

76.       All of the Defendants foregoing and following actions
and omissions breached the expressDecember 1, 1989 **Hoffer v. Fair**
SJC #85-71 Consent Decree Stipulation contract to "comply fully"
with 103 CMR 421 regulations and all prior class orders in that
case governing MCI-Cedar Junction segregation, as well as the
implied covenant of good faith and fair dealing and the final
**Hoffer** class settlement contract.

-18-

77.     Starting in 1995 and continuing through 2002, the De-
fendants acted with a race based animus unlawfully segregating
prisoners of Hispanic ethnic origin in the MCI-Cedar Junction
Max-end and such racial discrimination had a huge spillover
effect when Defendants used that opportunity to also segregate
non-Hispanic prisoners on the same security pretext.

78.     All non-Hispanic prisoners, as well as Hispanic pris-
oners, were unfairly punished in an unequal manner based on De-
fendants racial animus, denied equal protection and equal applic-
ation of the law and the full and equal benefit of 103 CMR 421
due process regulations with the force of law.

79.     The Defendants extreme racial animus caused them to
create the pretextual blanket Max-end segregation conditions,
knowing they were violating **Hoffer** class orders and willfully
disobeying the clear and unequivocal commands of Chief Justice
Liacos in **Hoffer v. Fair**, SJC #85-71.

80.     On October 10, 2002 the Supreme Judicial Court held
MCI-Cedar Junction Max-end segregation was in fact **Hoffer** class
DSU and not "general population" as defendants had pretextually
labelled it.  **Haverty v. Commissioner**, 438 Mass. 737(2002).

81.     The conduct outlinned herein violated the Plaintiffs
under the United States Constitution.

-19-

PLAINTIFF JOHN STOTE'S STATEMENT OF CLAIM:

82.   Plaintiff John Stote W61984, arrived at MCI-Cedar Junction on 12/24/96 and placed in Administrative Segregation, without notice,, a hearing, or afforded any type of "due process", nor was Plaintiff given any reason for his placement in Adminis- trative Segregation. Plaintiff remained in the East Wing Units for approximately twelve (12) weeks. Plaintiff had come to Cedar Junction via MCI-Concord without any type of reason or disciplinary report, and was only serving a three year sentence with a point base total that required placement at a minimum to medium security institution.

83.   In October of 1998 Plaintiff was transfered to Old Coloney Correction Center on April 4, 2000 Plaintiff was transfered back to MCI-Cedar Junction placed in nine (9) block segregation unit and placed on "AA/PI" status. Plaintiff was held in nine block for approximately 60-90 days before receiving a disciplinary report for conspiring to escape. This disciplinary report was a DDU sanction report. Plaintiff informed his attorney of what was transpiring, Plaintiff's attorney then repeatedly called MCI-Cedar Junction to inform the proper hearing officers that he Attorney John Bryson along with witnesses will be present at this hearing. This was to no avail, Plaintiff's witnesses were denied to be present at this hearing and the Hearing Officer stated at the hearing (Donna Rizzi) that she never heard from Plaintiff's Attorney and the hearing would go on as schedule. Attorney Bryson's Affidavit is attached as Exhibit "A".

84. Plaintiff was found guilty and given a sanction of one
(1) year to be served in DDU. The hearing officer used infor-
mant information (that was false and not given to the Plaintiff
until the time of the hearing), the fact that he lost almost
eighty pounds, and phone records discussing problems with
plaintiff's criminal attorney as reasons for finding the Plain-
tiff guilty. It is important to note that while being held at
Old Coloney Correctional Center Plaintiff had a high profile
job, working in maintenance fixing electrical and plumbing
problems in the institution, and even at times working at nite
when the institution was locked-down, I was always being watched
and the institution new I was loosing weight and never ques-
tioned about it. Plaintiff appealed in a timely matter to the
commissioners office and was denied. Plaintiff was also informed
at a later date that his so-called partner in this alleged con-
spiracy stated at his hearing that I had nothing to do with
his so-called plans. Plaintiff brought this to the attention of
the commissioner office to no avail. Plaintiff had asked for
all discovery materials before his hearing but was denied or
just not given this information. The defendant's clearly vio-
lated Plaintiff's constitutional rights on many levels.

85. Plaintiff was released from DDU on April 4, 2001 and placed
in the modular unit of the East Wing Segregation Units this was
after Plaintiff had already served his sanction. Two days later
Plaintiff was moved to Suffolk One of the East Wing Segregation
Unit. Plaintiff then asked the C/O how long before he will be
moved to population his reply was it should not be long becuase
there is nothing holding you in the segregation units.

86. Very soon after being released from DDU Plaintiff had a
class-board as is require, at this classboard Plaintiff requested
his point base number. Plaintiff was told that his point base
was zero, I stated to the members of this board how is that
possible I was just released from DDU, the reply was well you
didn't actually do anything so it does not effect your point
base score. Plaintiff replied but the Department of Corrections
can blatantly lie at my hearing and violate my constitutional
rights and hold me in DDU segregartion for not actually doing
anything. There was not reply, the class-boards decision was
for Plaintiff to remain at MCI-Cedar Junction. Plaintiff will
amend this law suit when he has knowledge of the members of
this board.

87. Approximately thirty days later Plaintiff still being held
in the maximum end of Cedar Junction after already serving his
complete DDU sanction and without receiving and other disciplin-
ary reports, a hearing, notice, any "due process," or more impor-
tantly reasons why he was being held in the East Wing Segregatiion.
Units Dale Bissonnette the Unit team manager was doing her daily
rounds and Plaintiff stoped her and asked when he would be moved
to population and why was he being held in the East Wing Segre-
gation Units when his sanction had already been served. Ms.
Bissonnette's reply was it is policy for anyone comming out of
DDU to spend six months in the East Wing Segregation Units before
being allowed back into population. I then asked to see this
policy, I was informed it is an unwritten policy, I said thats
impossible and a violation of my constitutional rights. Ms.
Bissonnette then informed me that when my six months are up I

would be moved back to population. Plaintiff then stated to Ms.
Bissonnette that this was unfair, I explained that I served time
in nine block awaiting my DDU hearing and some of that time was
not creditied to my DDU sentence, I then serve my sentence, and
now I am expected to serve at least another six months in the
East Wing Segregation Units for doing nothing wrong, Plaintiff
was told yes. At no time why Plaintiff was waiting to go to
population a toltal of almost seven months did he ever receive
a disciplinary report, a hearing, notice, or any type of con-
stitutional required due process. For no reason at all Plaintiff
remained in segregation in the East Wing Units locked down $22\frac{1}{2}$
hours per day.

88.   In all of Plaintiff's moves from population to the Segre-
gation Units Plaintiff has never first received notice, a dis-
ciplinary report, or any due process as required, it always
came, after I was moved to the segregation units or not at all.
While being housed in the East Wing Segregation Units I was not
entitled to programs, religious activties, work except as a
runner, or any good time.

89.   As are the rules and regulations of the Department of Corr-
ections, State of Massachusetts M.G.L.'s and the United States
U.S.C., I have attempted to obtain relief of my problem through
the Massachusetts Department of Corrections Grievance Policy,
this was to no avail, all grievances I have ever submitted have
come back denied, included in this but not limited to this are
grievances concerning good time and East Wing Segregation issues,
medical issues, First Amendment issues, and issues concerning

-23-

personal property, unfortunately Plaintiff has been moved from
MCI-Cedar Junction to SBCC and in that move some of his legal
storage was lost including his folder containg Plaintiff's
grievance issues. Plaintiff will explain as best as possible
his grievance problems and amend this suit with the missing
information after Plaintiff has seen his six part folder.

90.    Plaintiff submitted a grievance for good time and monitary
payment after the Haverty decision was decided by the SJC of
Massachusetts, Plaintiff asked for 7½ days a month good time
for each month he was locked-down in the East Wing Segregation
Units, Plaintiff also asked for $175.00 per day for every day
Plaintiff was illegally held in the East Wing Segregation Units.
This grievance was denied without reason as was my appeal.

91.    Plaintiff has an ongoing Federal Law suit Stote v. Bennett,
et, al., in prepareing and mailing forms to the defendants it
was found that, that mail sent to Federal Court concerning the
refusal of some defendants to except the law suit was never
received by the court. MCI-Cedar Junction especially Suffolk II
has had many problems with mail disappearing. Because of the
court not receiving this information on time this law suit could
have been dismissed, it was not, but Plaintiff had to put to-
geather the correct forms for the court again and absorb the
financial loss. Plaintiff submitted a grievance to number one find
out where my mail went and number two... reimbursement of the
financial loss. This grievance was denied stating we find no
problems with the mail as was my appeal, which I find disturbing
because in discussing my probelm with the Lt. of the IPS when

-24-

he ackonwlegde the problems inmates are having specifically
in Suffolk II.

92.  Plaintiff submitted a grievance for reimbursement of
clothing purchased from canteen that was lost when sent to the
laundry. Plaintiff's laundry came back missing 2 or 3 pairs of
socks and underware. The grievance was denied stating that the
instituion was not responsible for clothing sent to the insti-
tutional laundry and the grievance was denied. I resubmitted
the grievance and asked well then who's responsible I didn't
misplace the clothes the grievance came back again denied as
was my appeal.

93.  Plaintiff also has a medical grievance that will be discussed
later in this complaint. All of these grievance's were submitted
to grievance officer Gary Fyfe, Mr. Fyfe was not even a
grievance officer, Mr, Fyfe works for the recreation department
what was he doing answering grievances. The system is flawed
when no relief can be found of a legitimate grievance through
either the grievance officer or his superiors.

94.  Before I was arrested and sentence for this alleged crime
Plaintiff was hurt and required two back surgeries, Plaintiff
had also been to Beth Isreal Hospital for the same problems
and was told in order for Plaintiff to be helped he needed a
fusion to be done on his spine. All of these records are in my
six part medical file. After being released from DDU I saw a
doctor and explained my problems concerning my back the doctor
then prescribed a pain medication that is enough with other
medication I am given to make the pain liveable. Soon after

-25-